IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| S.G., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Civil No. 20-06106 (RMB) <br><br> OPINION |

**BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff from a denial of social security disability benefits.

For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Opinion's reasoning.

## I.   STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d

1

445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. Id. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" Id. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" Smith, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work."2 *202 Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." Id. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

Hess v. Comm'r Soc. Sec., 931 F.3d 198, 201–02 (3d Cir. 2019).

## II.   FACTS

The Court recites only the facts that are necessary to its determination on appeal. Plaintiff, who was 49 years old at the alleged onset date, claims disability, in part, due to diagnoses of schizoaffective disorder, bipolar disorder, depressive disorder, generalized anxiety disorder, obesity, gastroesophageal reflux disease, colitis or Crohn's disease, a history of cholecystectomy, hypothyroidism, vitamin D deficiency, and status post bilateral salpingo-oophorectomy for treatment of complex ovarian cyst. ALJ Decision, Tr. 14-15.

In support of her claim, Plaintiff provides, among other documents, hearing testimony, work history reports, disability reports, a third-party function report from her

3

mother, hospital records from Alliance Healthcare, progress notes from South Jersey Behavioral Health Resources, progress notes from Advocare Cohen Family Medicine, treatment notes from Dr. Leland Mosby and Dr. Christine Denario regarding her psychological care, office treatment records from several other doctors, and more.

## III.   ALJ'S DETERMINATION

The ALJ found Plaintiff not disabled. At Step One of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in work activity at the substantial activity level during the time between the alleged onset date and the date last insured. Tr. 15. At Step Two, the ALJ determined Plaintiff's impairments of schizoaffective disorder, bipolar disorder, depressive disorder, generalized anxiety disorder, obesity, gastroesophageal reflux disease ("GERD"), colitis, history of cholecystectomy, hypothyroidism, vitamin D deficiency, and status post bilateral salpingo-oophorectomy for treatment of complex ovarian cyst to be severe, and that these impairments "significantly limit the ability to perform basic work activities." Tr. 13. In evaluating Plaintiff's physical and mental impairments, however, the ALJ determined at Step Three that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* In determining Plaintiff's residual functional capacity, the ALJ found that Plaintiff could perform light work involving "unskilled simple, routine, repetitive work…[s]he should not have interacted with the public, but she could have had brief and superficial interaction with supervisors and coworkers." Tr. 17. At Step Five, the ALJ concluded that Plaintiff could perform work that exists in substantial numbers in the national economy, namely the positions of garment sorter, laundry classifier, or order caller. Tr. 26. Accordingly, the ALJ

4

found Plaintiff not to be disabled. *Id.*

In her decision, the ALJ determined that the medical evidence of record regarding Plaintiff's physical conditions failed to establish the requisite criteria necessary to meet or equal any of the listings enumerated in the regulations, whether considered singly or in combination. Tr. 15. With respect to Plaintiff's mental impairments, the ALJ also determined that they did meet or medically equal the criteria of listings in the regulations. *Id.* Specifically, the ALJ concluded that Plaintiff's impairments did not satisfy the "paragraph B" criteria. In each of the four "paragraph B" criteria (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself), the ALJ determined that Plaintiff had only a moderate limitation. Tr. 16. The "paragraph B" criteria were not satisfied as the ALJ did not conclude that Plaintiff suffered from at least two "marked" limitations or one "extreme" limitation in any of the provided categories.

The ALJ gave "some" weight to the opinion of the state agency consultative examiner Dr. Leland Mosby in noting that Plaintiff had "poor ability for social interaction and general adaptation." Tr. 24. The ALJ cited the fact that the examiner "failed to provide an opinion in precise functional terms" as reasoning for the minimal weight attributed to the medical opinion. *Id.*

With respect to the opinions of the state agency non-examining psychological consultants, the ALJ gave "great weight to the opinions regarding severity of mental impairments," and concluded that the hearing record supported their opinion that Plaintiff could have performed simple work tasks. *Id.*

As for Dr. Christine Denario, Plaintiff's treating specialist, the ALJ afforded only

"some weight" to her medical opinion, as the ALJ determined that "Dr. Denario's own treatment notes do not support these opinions that suggest marked to extreme functional limitation." Tr. 25. The ALJ found that the record did not support Dr. Denario's opinion, and only afforded those opinions "some" weight because the opinions support the contention that Plaintiff "had at least some limitation." *Id.*

## IV. ANALYSIS

Among other arguments, Plaintiff argues that the ALJ erred in determining Plaintiff's residual functional capacity, and that the ALJ's decision that there were a significant number of alternative jobs that Plaintiff was able to perform is not supported by substantial evidence. Plaintiff's Brief at 7.

### a. Residual Functional Capacity

Plaintiff argues that the ALJ, when considering Plaintiff's impairments in social functioning, failed to note the opinion of consultative examiner Dr. Leland Mosby regarding Plaintiff's prognosis being "guarded to poor" and that her "social interaction is poor and general adaption poor." *Id.* at 14. "While this opinion [Dr. Mosby's] was noted when formulating the RFC after Step Three, and purported to have been given weight there, the limitation was found to be too vague lacking precise functional terms of the opined limitations, and indicated that the record as a whole indicated that the finding of moderate mental limitations was supported by the record." *Id.* In reviewing the ALJ's findings at Step Two of the sequential analysis, it is true that the ALJ does not acknowledge or include Dr. Mosby's negative opinion of Plaintiff's potential outcome at this juncture in the decision, which is problematic. Instead, the ALJ only mentions Dr. Mosby's findings that Plaintiff showed good attention, could perform serial threes and serial sevens, and

6

responded appropriately to questions. *Id.* at 16. As for Dr. Denario's opinion of Plaintiff's condition, Plaintiff argues that the ALJ "took on the mantel [sic] of a reviewing medical expert and relied on her own lay reading of the record" when discounting the opinion of Dr. Denario. *Id.* Dr. Denario's notes indicate Plaintiff "had difficulty interaction [sic] with others appropriately and adapting," which the ALJ did not include in her analysis at Step Two. *Id.*

In his brief, the Commissioner argues that "the ALJ's RFC [residual functional capacity] assessment accounted for all her credibly established functional limitations." Opposition Brief at 11. The Commissioner argues that the ALJ attributed only "some" weight to Dr. Mosby's opinion that Plaintiff had poor ability to interact socially and adapt because it had "limited value, given that it was not an opinion on what Plaintiff could or could not do with respect to basic work activities." *Id.* at 14. As for the ALJ's treatment of the opinion of treatment specialist, Dr. Christine Denario, the Commissioner argues that the ALJ afforded the opinion only "some" weight because Dr. Denario's "own treatment notes did not support the opinions that suggested marked to extreme functional limitations." *Id.* at 15.

Plaintiff argues that the ALJ must give "some reason for discounting the evidence that is rejected," and the Court agrees. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). In reviewing the ALJ's decision at Step Two, the Court finds no analysis of Dr. Mosby's opinion regarding the potential negative outcomes surrounding Plaintiff's work capacity. Additionally, the ALJ does not provide any specific reasoning for discounting Dr. Denario's opinion of Plaintiff's condition outside of stating that the record does not support the doctor's opinion. Tr. 25. Citations to the record, however, are missing in this portion of

7

the analysis. The ALJ may very well arrive at the same conclusion as presented in her original decision, but this Court is unable to ascertain the extent to which she weighed, evaluated, and rejected the opinion evidence of Dr. Mosby and Dr. Denario at this step as the ALJ did not provide sufficient reasoning in her decision.

### b. **Significant Alternative Jobs**

Plaintiff's second argument is that the ALJ's decision that the Commissioner had met his burden of proof at Step Five in demonstrating that there were significant alternative jobs that Plaintiff was able to perform was not supported by substantial evidence. Specifically, Plaintiff argues that the Vocational Expert testified that "it would be inevitable that, in any position, a substantive interaction would invariably arise, and that an individual so limited to only brief and superficial contact with a supervisor would not be able to perform the position." Plaintiff's Brief at 19. Plaintiff alleges that the ALJ's decision is in conflict with the testimony of the Vocational Expert, and that the "reliance on a faulty characterization has the result of the Social Security Administration failing to meet their burden of evidence that there is alternative work available at Step Five." *Id.* at 21. This Court agrees. While the Commissioner argues that the ALJ reasonably concluded, based on the testimony of the Vocational Expert and credibly supported by the record, that Plaintiff could perform work in significant numbers in the national economy, the ALJ's decision fails to provide sufficient reasoning at Step Five. Tr. at 26. Despite the analysis in the Commissioner's brief of the specificity and intricacy of the ALJ's questioning of the Vocational Expert at the hearing, this level of analysis and reasoning was not present in the ALJ's decision, and leaves this Court unable to review the manner in which the ALJ evaluated aspects of the Vocational Expert's testimony. Instead, the ALJ only notes the

three occupations (garment sorter, laundry classifier, and order caller) and states that the Vocational Expert "testified that given all of these factors the individual would have been able to perform the requirements" of the jobs. *Id.* The Commissioner's brief supports the ALJ's finding with numerous citations to the hearing record that are not present in the ALJ's decision, rendering a review of these points difficult for the Court.

The Court concludes that remand, as opposed to reversal, is appropriate. On remand, the ALJ may revisit her evaluation of Dr. Mosby and Dr. Denario's opinions and provide further rationale for her discounting of the medical opinion evidence with respect to Step Two of the sequential evaluative process. Given that this case involves a mental illness and the complexities involved with such a diagnosis and review, the ALJ perhaps may arrive at the same conclusion. Similarly, the ALJ may revisit her evaluation of the Vocational Expert's testimony in relation to her analysis at Step Five. The ALJ must take into account and adequately weigh the medical evidence and expert opinions provided by the Plaintiff, and, more specifically, set forth her findings as to the weight afforded to the opinions of Dr. Mosby and Dr. Denario so that an informed review, if necessary, can be conducted. At this juncture, the ALJ must revisit her analysis consistent with the law and record facts discussed herein. As such, the Court **vacates** the decision of the ALJ and remands for proceedings consistent with the above analysis.

An accompanying Order will follow.

Date: September 29, 2021

RENÉE MARIE BUMB, U.S.D.J.